IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM HAYES, on behalf of himself and all others similarly situated, | : : : : | HON. JEROME B. SIMANDLE<br><br>Civil No. 10-460 (JBS/JS) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| WAL-MART d/b/a SAM'S CLUB | : : | |
| Defendant. | : : | |

APPEARANCES:

Daniel R. Lapinski, Esq. (argued)
Keven Hal Friedman, Esq.
Victoria Hwang-Murphy, Esq.
WILENTZ GOLDMAN & SPITZER
90 Woodbridge Center Drive
Suite 900
Woodbridge, NJ 07095
     and
James C. Shah, Esq.
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
     Attorneys for Plaintiff William Hayes

Paul H. Zoubek, Esq.
John Papianou, Esq. (argued)
Gregory John Hauck, Esq.
Stacy Alison Fols, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
457 Haddonfield Road
Suite 600
Cherry Hill, NJ 08002
     Attorney for Defendant

**SIMANDLE**, Chief Judge:

# I.  INTRODUCTION

     This matter is before the court on Plaintiff William Hayes'

("Plaintiff") motion for class certification [Docket Item 27].
The Defendant, Wal-Mart Stores Inc. d/b/a Sam's Club ("Defendant"
or "Sam's Club") filed opposition to this motion.  Following oral
argument, the motion was temporarily stayed at the request of the
parties, and the stay was recently lifted.

    In this action, Plaintiff alleges that Sam's Club marketed,
represented and sold to its members Sam's Club Service agreements
for as-is products without disclosing to the purchaser that as-is
products were expressly excluded from coverage.  The Plaintiff
alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A.
§ 56:8-2, as well as causes of action for breach of contract and
unjust enrichment.

    For the reasons set forth below, the Plaintiff's motion for
class certification will be granted.

**II.  BACKGROUND**

    **A. Factual and Procedural History**

    Defendant Sam's Club is an American chain of membership-only
retail warehouse clubs which sell groceries and general
merchandise, which includes as-is products.  (Patulak Dep. at
22:15-24:1.)  As-is products are marked with an orange sticker
and the sale of these as-is products results in a price override.
(Patulak Dep. at 25:7-11; 26:9-11.)  A price override is
performed at the checkout register to ensure that the price
charged the customer equals the marked-down price on the orange

sticker.  (Patulak Dep. at 26:2-11.)  Aside from marking down the price of an as-is item, price overrides are used at the checkout register if the price of a scanned item is different from the posted price, a competitor is offering the same item for less; or a member purchases an item and later discovers it is on sale. (Patulak Dep. at 26:15-22; 63:6-64:-19.) A price override can be made by a member of management for a number of reasons aside from the item being sold as-is. (Patulak Dep. at 63:25-64:4.)

Every Sam's Club store is required to keep track of as-is orange-sticker items in a Claims Orange Sticker Price Override Log ("Orange Sticker Log") which is maintained at the store level pursuant to a company-wide policy.  (Patulak Dep. at 54:14-57:17.)  The Orange Sticker Log records the designation of products as as-is but does not track the sale of those items. (Patulak Dep. at 56:8-57:12.)  Sam's Club has no method of identifying which Members purchased as-is products. [Patulak Dep. at 53:18-23.]

Defendant Sam's Club offers its members the option of purchasing Service Plans through National Electronics Warranty Corp. ("N.E.W.").  (Quinn Dep. at 11:17-19.)  The terms and conditions of the Service Plan are the same at each Sam's Club location.  (Quinn Dep. at 39:3-11.)  The Service Plan expressly excludes "products sold 'as is' including but not limited to floor models (unless covered by a full manufacturer's warranty on

3

your date of purchase) and demonstration models." (Lapinski Cert. Ex. E "Sam's Club Service Agreements Terms and Conditions".)

N.E.W. is responsible for training Sam's Club employees on the sale of service plans. (Lapinski Ex. E.)  In addition, Sam's Club has instructed its employees to "Offer Every Time" when selling Service Plans. (Quinn Dep. at 62:7-23; 63:22-25.)  In 2006, the sale of Service Plans comprised a portion of the Defendant's profit. (Lapinski Cert. Ex. H.)

Plaintiff William Hayes is currently and has been a member of Sam's Club for more than ten years. (Hayes Dep. at 10:14-21.) Plaintiff purchased an as-is power washer from Defendant on August 7, 2008. (Hayes Dep. at 12:8-11.) At the time of purchase, the Sam's Club cashier offered Plaintiff a Service Plan, despite the product being sold as-is.  Plaintiff purchased the Service Plan for $5.26. (Hayes Dep. at 20:22-21:12.)  Plaintiff was never informed by anyone that the Service Plan specifically excluded as-is products. (Hayes Dep. at 121:11-15.)  There is no evidence in the record that the Plaintiff was ever offered a refund for the Service Plan or that the Plaintiff ever had the power washer serviced pursuant to the warranty.

Similarly, on July 1, 2009, Plaintiff purchased a Vizio television from the Defendant. (Hayes Dep. at 31:12-16.)  The television was sold to Plaintiff as an as-is product.  (Hayes Dep. at 35:15-22; 36:10-21.)  At the time of purchase, the Sam's

4

Club cashier again offered Plaintiff a Service Plan, despite the product being sold as-is. Plaintiff purchased the Service Plan for $39.85. (Hayes Dep. at 42:7-44:21.) Plaintiff was never informed by anyone that the Service Plan specifically excluded as-is products. (Hayes Dep. at 121:11-15.)

When the Plaintiff brought the television home, he noticed the remote was missing, as well as other things. (Hayes Dep. at 40:24-41:19; 52:15-53:20.) Plaintiff returned to Sam's Club and was given a remote control that did not work. (Hayes Dep. at 57:6-58:2.) Plaintiff returned again to Sam's Club and was advised by a Sam's Club employee that the Service Plan he purchased did not cover as-is products. (Hayes Dep. at 62:9-63:16; 69:1-70:8.)

The Defendant offered a refund of the cost of the Service Plan; however, the Plaintiff declined. Instead of refunding the service plan, the Defendant then gave the Plaintiff a new remote control. (Hayes Dep. at 74:4-13.)

On January 26, 2010, the Plaintiff filed the instant Class Action Complaint against Defendant on behalf of himself and all other persons in the State of New Jersey who had purchased a Service Plan on as-is products from January 26, 2004 to the present in the State of New Jersey. (Docket Item 1.) The Complaint alleges violations of the New Jersey Consumer Fraud Act, breach of contract and unjust enrichment as a result of

Defendant's practice of selling Service Plans to cover as-is products without first informing Plaintiff or Class members that the Service Plans do not cover such products.

### B. The Instant Motion

In his motion, the Plaintiff argues that class certification is appropriate because he has satisfied all the prerequisites under Rule 23.  The Plaintiff seeks to certify his New Jersey Consumer Fraud Act Claim, breach of contract and unjust enrichment claims on behalf of the following class:

> All consumers who, from January 26, 2004 to the present, purchased from Sam's Clubs in the State of New Jersey, a Sam's Club Service Agreement to cover as-is products.

The general premise underlying Plaintiff's complaint is that the Defendant's practice of selling Service Plans to cover as-is products without first informing the Plaintiff and other class members that the Service Plans exclude as-is products is unlawful.

The Plaintiff maintains that he has satisfied all four factors under Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b) to warrant class certification in this matter.  First, the Plaintiff argues that numerosity has been met because discovery has shown that Service Plans were sold to members in 3,500 price override transactions in the State of New Jersey from January 2004 to the present.

(Pl.'s Brief at 12.)  Plaintiff contends that this high number of transactions makes joinder difficult and impracticable. Therefore, a class action is more efficient and expedient.

Second, the Plaintiff maintains that the typicality requirement is satisfied.  The Plaintiff states that his claim arises from the same course of conduct as all other class members, namely being sold a Service Plan on an as-is product by a Sam's Club cashier at time of purchase without being informed that the Service Plan excludes as-is products from coverage. Here, Plaintiff argues that his claim and the class's claims arise out of the Defendant's uniform course of conduct and therefore, the typicality requirement is met.

Third, the Plaintiff contends that he will fairly and adequately protect the interests of the class. The Plaintiff argues that his claims are essentially identical to the class and his interests are not antagonistic to the class.  In addition, the Plaintiff maintains that his attorneys are qualified and have experience litigating class action cases.

Finally, the Plaintiff argues that he satisfies both the commonality requirement of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3).  The Plaintiff maintains that common questions of law and fact predominate and contends that the elements of his New Jersey Consumer Fraud Act claim, breach of contract claim and unjust enrichment claim can

be satisfied through common proofs.  In addition, Plaintiff relies on Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) and Elias v. Unger's Food Products, 252 F.R.D. 233 (D.N.J. 2008) for the proposition that predominance is readily met in cases alleging consumer fraud.

Therefore, the Plaintiff argues that his motion for class certification should be granted and that a Rule 23(b)(3) class be certified.

The Defendant opposes this motion on four main grounds. First, the Defendant contends that the Plaintiff's definition of the proposed class is overbroad and includes class members who suffered no harm.  Therefore, the Defendant argues that the Plaintiff's proposed class lacks standing to bring suit.

Second, the Defendant argues that Plaintiff's proposed class is not ascertainable because there is no way to determine which proposed class members purchased service plans for ineligible as-is items.  The Defendant states that it only knows whether a Member purchased an item subject to a price override and cannot ascertain whether the price override was because the product was sold as-is. (Patulak Dep. at 26:15-22; 53:18-23; 57:7-12; 63:6-20; 63:25-64:4.)  Consequently, the Defendant maintains that individual inquiries would be necessary to determine whether a particular member purchased a Service Plan for an as-is item. Since there is no class-wide method for determining who is or is

not a class member, Defendant argues that Plaintiff's motion be denied.

Next, the Defendant disputes whether the Plaintiff has satisfied his burden to show by a preponderance of the evidence that the class is sufficiently numerous to warrant class certification.  The Defendant does not dispute that Service Plans were sold on 3,500 price override transactions.  However, the Defendant points out that price override transactions occur for a number of reasons and that it is uncertain whether as-is items were sold during any of those 3,500 transactions.[1]  Defendant maintains that a finding of numerosity in this case would be mere speculation because the Plaintiff has failed to identify one other class member besides himself that purchased a Service Plan with an as-is product.

Finally, the Defendant argues that individual issues predominate and the Plaintiff has not satisfied Rule 23(b)(3). The Defendant argues that there are individual questions with regard to whether a loss actually occurred.  Specifically, the Defendant argues that there is no way to determine if the price override was due to an as-is product, if the as-is product was

---

[1] In addition to marking down the price of an as-is item, price overrides are used at the checkout register if the price of a scanned item is different from the posted price, a competitor is offering the same item for less; or a member purchases an item and later discovers it is on sale. (Patulak Dep. at 26:15-22; 63:6-64:-19.)

covered by a full manufacturers warranty or whether the member was denied reimbursement of the Service Plan or coverage.  These individualized questions, the Defendant argues, prevent class certification.

## III.  DISCUSSION

Plaintiff's claims are based on two separate Service Plans the Plaintiff purchased for two as-is products.  The first Service Plan was purchased in conjunction with a power washer.  There is no evidence in the record or the pleadings indicating that the power washer was in need of service and the Plaintiff was denied service despite his purchase of a Service Plan.  There is also no evidence in the record that the Plaintiff was offered a refund for his purchase price of the Service Plan on the power washer prior to the filing of this litigation.  Rather, it is apparent from the record that the Plaintiff paid $5.26 for a Service Plan that expressly excluded his as-is product from coverage.  The Court will analyze the Plaintiff's class certification motion with reference to this first Service Plan.  The Court will address the Plaintiff's second Service Plan on his as-is television _infra_ at Section B.

### A. Class Certification

"District courts have discretion under Rule 23 to certify a class." <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 297 (3d Cir. 2006). To certify a class, the Court must find that the proposed class

meets the prerequisites to a class action; "plaintiffs must
establish that all four requisites of Rule 23(a) and at least one
part of Rule 23(b) are met." In re Chiang, 385 F.3d 256, 264 (3d
Cir. 2004).  As the Court of Appeals recently emphasized:

> [T]he requirements set out in Rule 23 are not mere
> pleading rules.  The court may delve beyond the pleadings
> to determine whether the requirements for class
> certification are satisfied . . . .
>
> Class certification requires a finding that each of the
> requirements of Rule 23 has been met.  See [Unger v.
> Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005)] ("The
> plain text of Rule 23 requires the court to 'find,' not
> merely assume, the facts favoring class certification.").
> Factual determinations necessary to make Rule 23 findings
> must be made by a preponderance of the evidence.  In
> other words, to certify a class the district court must
> find that the evidence more likely than not establishes
> each fact necessary to meet the requirements of Rule 23.

In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 316,
320 (3d Cir. 2008) (some internal quotations and citations
omitted).  Thus, Plaintiff has the burden of introducing evidence
sufficient to meet a burden of proof by a preponderance of the
evidence that he has satisfied each element of Rule 23.  The
District Court must be satisfied that "the evidence more likely
than not establishes each fact necessary to meet the requirements
of Rule 23." Id. at 320.

However, "it is not necessary for the plaintiffs to
establish the merits of their case at the class certification
stage, and ... in determining whether a class will be certified,
the substantive allegations of the complaint must be taken as

11

true." Chiang, 385 F.3d at 262.  "Depending on the circumstances, [however,] class certification questions are sometimes 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' and 'courts may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" Beck, 457 F.3d at 297 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir. 2001)).

However, "a district court has limited authority to examine the merits when conducting a certification inquiry" and the "ability of the named plaintiff to succeed on his or her individual claims" is not a prerequisite to class certification. Sullivan v. DB Investments, Inc., 667 F.3d 273, 2011 U.S. App. LEXIS 25185 at *68 (3d Cir. Dec. 20, 2011).  "Put another way, a district court may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, but not in order to determine whether the individual elements of each claim are satisfied." Id.

### 1.   Ascertainability and Standing

Prior to determining whether the requirements of Rule 23 have been met, the Court must first analyze whether the Plaintiffs' proposed class definition is "readily ascertainable based on objective criteria." Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009).

> "While class definitions obviously are tailored to the
> specifics of every case, important elements of defining
> a class include: (1) specifying a particular group that
> was harmed during a particular time frame, in a
> particular location, in a particular way; and (2)
> facilitating a court's ability to ascertain its
> membership in some objective manner." <u>Bentley v.
> Honeywell Int'l Inc.</u>, 223 F.R.D. 471, (S.D. Ohio 2004)
> (citing <u>Crosby</u>, 796 F.2d at 580). Although "Plaintiffs
> need not prove that class members have been injured for
> purposes of defining the [classes], Plaintiffs' class
> definitions must have some relation to the Defendant['s]
> activities." <u>O'Connor v. Boeing North American, Inc.</u>,
> 184 F.R.D. 311, 320 (C.D. Cal. 1998).

<u>Rowe v. E.I. Dupont Demours & Co.</u>, 262 F.R.D. 451, 455 (D.N.J. 2009).

In this case, the Defendant argues that the Plaintiff's proposed class is not ascertainable because it includes class members who suffered no harm.  This argument ignores clear case law which states that "plaintiffs need not prove that class members have been injured for purposes of defining the class." <u>Rowe</u>, 262 F.R.D. at 455.  Rather, the Court must engage in a two part analysis.  First, the Court must determine whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way." <u>Id.</u>  Second, the Court must be able to ascertain the class's membership in some objective manner.  <u>Id.</u>

Here, the Plaintiff has proposed the following definition of the class:

> All consumers who, from January 26, 2004 to the present,
> purchased from Sam's Clubs in the State of New Jersey, a
> Sam's Club Service Agreement to cover as-is products.

This definition identifies a particular group: consumers who purchased a Service Agreement to cover as-is products from Sam's Clubs in the State of New Jersey.  The definition specifies a particular time frame and location: from 2004 to the present in the State of New Jersey.  This definition enumerates a particular way that the Defendant's conduct purportedly caused the class members harm: being sold Service Plans on as-is products when as-is products were excluded under the Service Plan.

     The Defendant argues that the Court will not be able to ascertain the class's membership in an objective manner.  The Defendant maintains that Plaintiff's proposed class includes Members who purchased as-is items covered by a full manufacturer's warranty and thus are entitled to coverage under the Service Plan.  The Defendant also alleges that N.E.W. has agreed to honor Service Plans sold on as-is items despite the language of the agreement.  Defendant argues that Plaintiff's proposed class also includes members who were reimbursed the cost of their Service Plans.  As a result, Defendant argues that the Plaintiff's proposed class definition is overly broad and membership in the class is unable to be ascertained in an objective manner.

     The Defendant's arguments regarding the second prong of this analysis are more persuasive; however, these arguments do not

14

affect whether the class is readily ascertainable.  The Defendant's concerns address whether members of the class suffered actual damages, which is a more appropriate consideration for the numerosity requirement, not ascertainability.  Specifically:

> the question of whether an individual suffered actual damages does not in any way affect the ascertainability of the class. A class must not be amorphous or imprecise in order to pass the ascertainability requirement. *See Moore's Federal Practice § 23.21[1]*. Uncertainties about the existence or number of individuals who have suffered actual damages do not render a class description amorphous or imprecise. Rather, such uncertainties could only affect the numerosity requirement for class certification.

Keller v. Macon County Greyhound Park, Inc., No. 07-1098, 2011 U.S. Dist. LEXIS 31777, *10 (M.D. Ala. March 24, 2011).

In addition, a Court has broad discretion to modify the definition of a proposed class in order to render the class readily ascertainable.  Powers v. Hamilton County Public Defendant Comm'n, 501 F.3d 592, 619 (6th Cir. 2007) and see Henry v. St. Croix Alumina, LLC, No. 1999-0036, 2008 U.S. Dist. LEXIS 43755, *34 (D.V.I. June 3, 2008).  At oral argument, the Plaintiff proposed the following amended definition:

> **All consumers who, from January 26, 2004 to the present, purchased from Sam's Clubs in the State of New Jersey, a Sam's Club Service Plan to cover as-is products. Excluded from the Class are consumers whose as-is product was covered by a full manufacturer's warranty, was a last-one item, consumers who obtained service on their product, and consumers who have previously been reimbursed for the cost of the Service Plan.**

15

This amended proposed definition is a distinct improvement as it enables the court to ascertain class membership in an objective manner and renders the class readily ascertainable, while excluding from the class those who have not suffered comparable harm.  The Court will now address the requirements of Rule 23(a) and Rule 23(b).

## 2.   Rule 23(a)

Rule 23(a), Fed. R. Civ. P., provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Where, as here, "an action is to proceed under Rule 23(b)(3), the commonality requirement [of Rule 23(a)] is subsumed by [Rule 23(b)(3)'s] predominance requirement." Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008) (internal quotations and citations omitted).  This Rule 23(a) discussion accordingly accounts for the numerosity, typicality, and adequacy factors, leaving the consideration of commonality for the discussion of Rule 23(b)(3) predominance, infra.  See id.

### a. Numerosity

Rule 23(a)(1) provides that class certification should not

16

be granted unless the potential membership of the proposed class is "so numerous that joinder of all members is impracticable." Specifically, "impracticability refers to the degree of difficulty or inconvenience involved in joining all members of the proposed class in accordance with Rule 19." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1998).  When determining whether numerosity is satisfied, a court should consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits." Id.  See also Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 566 (D.N.J. 2010).

In addition, the "plaintiff need not precisely enumerate the potential size of the proposed class, nor is the plaintiff required to demonstrate that joinder would be impossible." Cannon, 184 F.R.D. at 543.  As the Court of Appeals has explained, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

In this case, the potential class is as large as 3,500 members, which represents the number of price override transactions from 2004 to the present in the State of New Jersey where a Service Plan was also purchased.  It is unclear how many

17

of these these override transactions involved as-is items that were excluded from coverage under the Service Plan.  This is due to the Defendant's inability to determine whether the price overrides in these transactions involved the purchase of an as-is product.  Consequently, Sam's Club does not track which members purchased as-is items and only tracks whether a member purchased an item subject to a price override. [Patulak Decl. ¶¶ 13, 14.]

The Plaintiff's evidence that 3,500 Service Plans were purchased in conjunction with a price override transaction is sufficient to infer numerosity at this stage of the litigation. If even five percent of the overrides involved as-is purchases with a Sam's Club Service Plan, there would be 175 such purchasers, easily satisfying the numerosity requirement for present purposes.  The Plaintiff should not be forestalled from class certification due to the Defendant's imprecise record keeping.  If, after the Plaintiff has had an opportunity to notify class members and it becomes apparent that there are insufficient members to satisfy the numerosity requirement, then the Defendant may file a motion for de-certification at that time.

Therefore, the Plaintiff has sustained his burden of proof to establish numerosity for class certification purposes.

### b. Typicality

The typicality prong is satisfied here.  To address the

question of typicality, the Court assesses:

> whether the named plaintiffs' claims are typical, in
> common-sense terms, of the class, thus suggesting that
> the incentives of the plaintiffs are aligned with those
> of the class.  Factual differences will not render a
> claim atypical if the claim arises from the same event or
> practice or course of conduct that gives rise to the
> claims of the class members, and if it is based on the
> same legal theory.

Beck, 457 F.3d at 295-96 (internal quotations and citations

omitted).  Put differently, "[t]ypicality entails an inquiry

whether the named [plaintiffs'] individual circumstances are

markedly different or the legal theory upon which the claims are

based differs from that upon which the claims of other class

members will perforce be based."  Hassine v. Jeffes, 846 F.2d

169, 177 (3d Cir. 1988) (internal quotations and citations

omitted).

The named Plaintiff's claims in this case "arise[] from the

same . . . practice or course of conduct that gives rise to the

claims of the class members," and are based on the same legal

theory.  Beck, 457 F.3d at 295-96 (internal quotations and

citations omitted).  The Plaintiff has alleged that he, like the

absent class members, was sold a Service Plan from the Defendant

to cover an as-is product without being informed that the Service

Plan excludes as-is products.  The Plaintiff has thus alleged

that he "suffered harm as the result of the same company-wide

conduct that injured the absentee class members," meaning that

the typicality criterion is satisfied here.  In re Prudential

19

<u>Ins. Co. of America Sales Practice Litigation Agent Actions</u>, 148 F.3d 283, 312 (3d Cir. 1998).

### c. Fairness and Adequacy

The final Rule 23(a) consideration is whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  With regard to Rule 23(a)'s adequacy prong, the Court of Appeals has explained that the Court's task is to address whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class."  <u>Hassine</u>, 846 F.2d at 179.  "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  <u>Wetzel v. Liberty Mut. Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975).

Both of these factors are present here.  Plaintiff's attorney has substantial experience with class actions, and has litigated this matter zealously.  In addition, the Plaintiff and the class members purportedly suffered harm from the same alleged course of conduct:  the Defendant selling Service Plans on as-is products without informing the purchaser that as-is products were

excluded from coverage under the Service Plan.  Accordingly,
Plaintiff's interests are not antagonistic to those of the class.
Therefore, the fairness and adequacy requirement is satisfied in
this case.

### 3.   Rule 23(b)(3)

In addition to the requirements of Rule 23(a), the Plaintiff
must also satisfy one of the alternative requirements of Rule
23(b) to certify the proposed class.  The Plaintiff argues that
Rule 23(b)(3) is satisfied and maintains that common questions of
law or fact predominate and that the class action is superior to
other methods for adjudicating the case.

Rule 23(b)(3) provides that a class action may be maintained
only if:

> the court finds that the questions of law or fact common
> to class members predominate over any questions affecting
> only individual members, and that a class action is
> superior to other available methods for fairly and
> efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).  "The twin requirements of Rule 23(b)
are known as predominance and superiority."  In re Hydrogen
Peroxide, 552 F.3d at 310.  Both requirements will be addressed
separately below.

### a. Predominance

The Court of Appeals recently reviewed Rule 23(b)(3)'s
predominance requirement, explaining that

> [p]redominance "tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by

representation," <u>Amchem</u>, 521 U.S. at 623, a standard "far more demanding" than the commonality requirement of Rule 23(a), <u>id.</u> at 623-24, requiring more than a common claim. Issues common to the class must predominate over individual issues. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. <u>If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.</u>

<u>In re Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d at 310-11 (some internal quotations, citations, and footnotes omitted, emphasis added). Therefore, it is necessary to examine each claim the Plaintiff seeks to certify and determine whether the essential elements of the claim can be satisfied through common proofs.

However, the Court must take note of the recent Third Circuit decision, <u>Sullivan v. DB Investments, Inc.</u>, 667 F.3d 273, 2011 U.S. App. LEXIS 25185 (3d Cir. Dec. 20, 2011). In <u>Sullivan</u>, the Third Circuit discussed the certification of a class for settlement purposes and specifically addressed the differences between Rule 23 class certification and a Rule 12(b)(6) analysis with regard to addressing the merits of the underlying causes of action. The Third Circuit reasoned that "a district court has limited authority to examine the merits when conducting a certification inquiry" and emphasized that the "ability of the named plaintiff to succeed on his or her individual claims has

never been a prerequisite to certification of the class." <u>Id.</u> at *68.

The Court will follow the reasoning of the <u>Sullivan</u> decision in analyzing the instant motion for class certification.  It is not required for a plaintiff to prove the merits his claims on a motion for certification.  The Court will only look to whether the Plaintiff's claims can be satisfied through common proof and will refrain from treating the instant analysis as akin to a 12(b)(6) motion.

### 1. New Jersey Consumer Fraud Act

In order to prevail on a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a plaintiff must satisfy three elements. The Plaintiff must demonstrate (1) unlawful conduct on the part of the Defendant; (2) an ascertainable loss on the part of the Plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  N.J.S.A. § 56:8-19; <u>Bosland v. Warnock Dodge, Inc.</u>, 197 N.J. 543, 557 (2009).

In this case, all three elements of NJCFA can be satisfied through common proofs since the harm alleged arose from the same company-wide conduct, namely the Defendant's sale of Service Plans on as-is products.  The Plaintiff and fellow class members suffered an ascertainable loss when they were sold a product, the Service Plan, that had no value because the product purportedly covered under the warranty was expressly excluded.  The Plaintiff

and absent class members paid money for a product with no value and received no consideration from the Defendant.

Therefore, common proofs can be used to establish that these customers paid for a Service Plan and received nothing in return in violation of the NJCFA.

## 2. Breach of Contract

Similar to the analysis of the NJCFA, the Plaintiff's motion for certification of his breach of contract claim should be granted because these elements can be satisfied through common proofs.

In New Jersey, a breach of contract claim requires a plaintiff to satisfy three elements: (1) the existence of a valid contract; (2) the defendant's breach of the contract; (3) resulting damages. <u>AT&T Credit Corp. v. Zurich Data Corp.</u>, 37 F. Supp. 2d 367, 370 (D.N.J. 1999).

In this case, the existence of a valid contract and breach can be satisfied through common proofs since the Terms and Conditions of the Service Plans are the same for all Service Plans sold at Sam's Club stores.  In addition, damages are subject to common proof because the Plaintiff and class members were sold Service Plans that expressly excluded their as-is products.  The calculation of damages for each class member would presumably equal the amount each member paid for the Service Plan, which is data the Defendant maintains and has readily

accessible for all class members.

Therefore, common proofs can be used to establish a claim against the Defendant for breach of contract.

### 3. Unjust Enrichment

Similar to the analysis of the NJCFA claim and breach of contract claim, the Plaintiff's motion for certification of his unjust enrichment claim can be satisfied through common proofs.

Under New Jersey law, there are two basic elements of unjust enrichment.  "A plaintiff must demonstrate both that defendant received a benefit and that retention of that benefit without payment would be unjust." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733 (D.N.J. 2008).

In this case, the first element requiring the plaintiff to demonstrate the receipt of a benefit by the defendant is met through common proofs.  The Defendant received a benefit through the sale of Service Plans to the Plaintiff and other purported class members.  The second element is also met through common proofs because the Defendant's conduct in selling the Service Plans to customers without first informing customers that the Service Plan excludes as-is coverage is common to all members.

Therefore, the Plaintiff should be granted class certification on the unjust enrichment claim since the Plaintiff can establish through common proofs that it would be unjust for the Defendant to retain the purchase price of the Service Plans

on as-is products.

### b. Superiority

The second requirement of Rule 23(b)(3), the superiority requirement, requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." <u>Georgine v. Amchem Prods.</u>, 83 F.3d 610, 632 (3d Cir. 1996).  Rule 23(b)(3) enumerates the following four factors for the Court to consider in addressing the superiority requirement:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
> (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3).

In analyzing these factors, a class action would be an efficient means of adjudicating the Plaintiffs' claims.  The interests of members of the class in individually controlling the prosecution or defense of separate actions appears to be minimal and no other litigation has been commenced by or against members of the class.  It would be desirable to concentrate this litigation in one forum considering all the class members' claims arise out of the same uniform course of conduct allegedly engaged

in by the Defendant.

In addition, the loss suffered by class members will most likely be small as the cost of the Service Plan is minimal. These small individual stakes, typical of retail consumer classes, make class action a superior method of handling the Plaintiff's claims.  Specifically:

> the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997).

Therefore, the Plaintiff's claim satisfies the second prong of the Rule 23(b)(3) analysis as it is the superior method for handling Plaintiff's claims.

### 4. Conclusion

The Plaintiff's claims arising out of the sale of a Service Plan for his as-is power washer are proper for class certification.  The Plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b).  Therefore, Plaintiff's motion for class certification will be granted as to these claims.

### B. Mootness

However, the Plaintiff purchased a second Service Plan with his as-is television, and did have his television successfully serviced for a missing part.  Therefore, the court must examine

whether the Plaintiff's claim with regard to the second Service Plan is a proper basis for class certification.

First, with regard to the second Service Plan, the Plaintiff does not fit the class definition in order to be considered a member of the class.  The revised class definition requires that a Service Plan was purchased for an as-is product and the member did not receive service on the product.  In this instance, the Plaintiff did receive service on his television and received a replacement part which was missing from the product.  Therefore, the Plaintiff is not a member of the class with regard to his purchase of a Service Plan on his as-is television because he received full performance under the service agreement.

In addition, because the Plaintiff received service on his as-is television, his claims as to the purchase of the second Service Plan are moot.  Article III requires a plaintiff to present a live case or controversy.  Specifically, under Article III:

> [A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. To establish the existence of such a "live" issue, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

International Brotherhood of Boilermakers, etc. v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)(citations omitted).  Importantly, "the central question of all mootness problems is whether changes

28

in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Id. (citing Jersey Central Power and Light Co. v. State of New Jersey, 772 F.2d 35, 39 (3d Cir. 1985)).

There are only two limited exceptions to this rule. A named plaintiff whose individual claim is moot may continue in his representative capacity:

> (1) to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide; and (2) to appeal a denial of a class certification motion presented when his claims were live.

Lusardi, 975 F.2d at 975. Absent these two exceptions, the adequacy requirement is not met when a named plaintiff does not have a live individual claim and therefore the named plaintiff's motion for class certification should be denied as to a moot claim. "[T]he named plaintiff has the requisite personal stake in class certification only if . . . he has a live individual claim when the district court decides the class certification issue, or, at the very least, he had a live claim when he filed for class certification." Id. at 977.

In this case, with regard to the television purchase, the two exceptions noted above do not apply because serious questions with regard to the justiciability of Plaintiff's claims based on his as-is television Service Plan existed at the time his case was filed and prior to his filing of the instant motion for class

certification.  The second Service Agreement was purchased in conjunction with an as-is television.  The television was missing a remote.  The Plaintiff went to Sam's Club and sought to enforce the Service Agreement.  Despite the exclusion of as-is products from the Service Agreement, the Defendant offered the Plaintiff a refund of the Service Agreement or alternatively offered to honor the Service Agreement by providing the Plaintiff with a replacement remote.  The Plaintiff chose to receive a replacement remote which was given to him by the Defendant.  Therefore, the Service Agreement was honored despite the as-is exclusion and the Plaintiff was made whole.

Since the Plaintiff had already been made whole with regard to the second Service Agreement long before filing his complaint herein, this dispute between the parties as to the Service Plan on the television is moot.  The court is forestalled from offering any meaningful relief to the parties since the Service Plan has been honored despite the as-is exclusion.[2]  Accordingly, this aspect of Plaintiff's case is moot and not a proper basis for class certification.

---

[2] Although this second Service Plan transaction does not give rise to a justiciable dispute, the fact that Defendant, on a second occasion, offered a Service Plan for this as-is product is relevant toward suggesting that Plaintiff's first Service Plan transaction (on the as-is power washer) was not an isolated event.

## IV. CONCLUSION

The Plaintiff's claims arising out of the first Service Plan sold on the as-is power washer are sufficient to serve as a basis for Plaintiff's motion for class action certification. The Plaintiff meets all the requirements of Rule 23(a) and Rule 23(b) and therefore, Plaintiff's motion for class certification will be granted with regard to the claims arising out of the sale of the first Service Plan.

However, Plaintiff's motion for class certification is denied as moot with regard to the claims arising out of the Plaintiff's second Service Plan for the as-is television. Plaintiff himself does not fit within the revised class definition because the Plaintiff's claims arising out of the second Service Plan are moot as Defendant honored the Service Agreement and the Plaintiff was made whole.

Therefore, the Plaintiff's motion for class certification is granted. The Plaintiff's claims arising out of the second Service Plan are dismissed as moot.

The accompanying Order will be entered.


**March 12, 2012**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge

31